(C. D. 864)

EUROPEAN AGENCIES CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 29, 1944)

*Philip Stein* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Sybil Phillips*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: At Lake Charles, La., a subport in the customs district of which Port Arthur, Tex., is the headquarters port (T. D. 50149) a consumption entry was made of a shipment of barbed wire, wire staples, wire nails, and wire fencing from Germany, on May 4, 1939. Upon entry the amount of the estimated regular duties was paid and the collector also required payment of a sum equivalent to 25 per centum of the invoice value in the event that the shipment should be found subject to countervailing duty under section 303 of the Tariff Act of 1930. The collector took this action in obedience to instructions of the Treasury Department, reported in 74 Treas. Dec. 389, T. D. 49821. Said instructions are herewith set forth in full for convenience of reference.

\* \* \* \* \* \* \*

*To Collectors of Customs and Others Concerned:*

The Bureau is in receipt of information concerning the operation of so-called "barter" transactions through which the importation into the United States of merchandise from Germany is financed by means of premium prices for certain products, particularly cotton and copper, which satisfies the Bureau that such transactions involve the payment or bestowal of bounties or grants within the meaning of section 303 of the Tariff Act of 1930 (U. S. C. title 19, sec. 1303).

Accordingly, notice is hereby given that dutiable merchandise imported directly or indirectly from Germany, which has been or shall be acquired by or through the disposal of other goods on a premium basis (regardless of the character of such other goods or of the method or means of such disposal), if entered for consumption or withdrawn from warehouse for consumption after the expiration of thirty days after the publication of this decision in a weekly issue of TREASURY DECISIONS, will be subject to the payment of countervailing duties equal to the net amount of any bounty or grant determined or estimated to have been paid or bestowed upon its exportation from Germany.

Upon the entry for consumption or withdrawal from warehouse for consumption, on or after the effective date of this notice, of dutiable merchandise imported directly or indirectly from Germany, there shall be collected in addition to any

other duties estimated or determined to be due, estimated countervailing duties at the rate of 25 percent of the invoice value. The liquidation of entries covering such merchandise shall be suspended and the facts concerning the manner of payment for the goods shall be reported promptly and in full to the Bureau.

\*　.　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Certain other instructions were issued later with which we are not here concerned.

In due time the goods were examined and appraised and on July 27, 1939, the entry was liquidated as entered and notice of liquidation was duly posted. In liquidation the collector did not follow the direction contained in the concluding sentence of T. D. 49821 that he should suspend the liquidation of such entries and report "the facts concerning the manner of payment for the goods" to the Bureau of Customs.

No timely protest was filed against this liquidation which accordingly became final 60, days thereafter by operation of law. (Section 514, Tariff Act of 1930.) · *Phipps* v. *United States*, 22 C. C. P. A. (Customs) 595, T. D. 47601.

On April 5, 1940, the importer filed at the Lake Charles customhouse a protest against the refusal of the collector to reliquidate the entry on the ground of clerical error. The claim in the protest is stated as follows:

The ground of objection under the tariff act of June 17, 1930, is that said liquidation contains "Clerical Error" and we protest the denial to reliquidate said entry to correct said error.

This protest is defective in two respects. It fails to cite any statutory authority in support of the claim therein, although there are two different sections in the statute dealing with liquidation because of clerical error. It does not give the date of the collector's refusal to reliquidate against which the protest is lodged. Hence, to determine its timeliness we must resort to some of the other papers in the files transmitted with the protest. Among them we find a letter from the assistant collector of customs at Port Arthur to the importer in New Orleans advising him of the conclusion reached by the Bureau of Customs that the action of the customs officials at Lake Charles in liquidating the entry without referring to the Bureau for instructions did not constitute clerical error as that term is used in the statute, and hence that the Bureau was without authority to order reliquidation. This letter is dated March 28, 1940, is marked in evidence as exhibit 1, and it is the only one of the many epistolary documents which was admitted in evidence. We shall consider this as the date of the collector's refusal to reliquidate; therefore the protest before us is timely. Stampings on said protest indicate that it was received at Lake Charles customhouse April 5, 1940, and at Port Arthur, the headquarters port, April 8, 1940.

The filing of the protest followed a long drawn-out exchange of

letters between the importer and the Bureau of Customs, which correspondence, that is to say, carbon copies of the importer's letters and originals of the Bureau's replies, were offered in evidence by importer's counsel and were excluded by the judge before whom the case was heard on circuit. The ruling was proper. Such letters did not constitute evidence. *Lings* v. *United States*, 38 Treas. Dec. 708, T. D. 38538, G. A. 8388; *Neumaier* v. *United States*, 51 Treas. Dec. 278, T. D. 42037. For the purpose of this case we shall treat the protest as timely and as sufficient.

The sole claim set up in the protest is, as already stated, that— * * * said liquidation contains "Clerical Error" * * *, and the effort of the learned counsel for the importer was directed toward demonstrating that the failure of the collector to obey the direction contained in T. D. 49821, and suspend liquidation constituted clerical error as that term is used in the statute. In so arguing, counsel is, we think, giving the language of the protest an interpretation almost too broad to be justifiable. The protest does not object to the act of liquidation. It states the liquidation "contains clerical error." The ordinary and almost inevitable implication of those words is that some mistake—"clerical error"—was committed in the final computation or ascertainment of the duties, which is the definition of liquidation contained in article 818, Customs Regulations of 1937, based on many judicial decisions. There is nothing to indicate that any such mistake happened in this case. Assuming, without conceding, that the protest is sufficient to raise the point which is argued by both counsel in their briefs, viz, whether or not the action of the collector in liquidating the entry without first submitting it to the Bureau of Customs, constituted clerical error, we are clearly of the opinion that the term "clerical error" is not applicable, either in its ordinary signification or as it has been defined by the courts, to the collector's act of liquidation. So far as the record shows that was a deliberate act and was done intentionally. Therefore under the decisions there was no clerical error. See *Morimura* v. *United States*, 160 Fed. 280, T. D. 28866 and *McQuillan* v. *United States*, 18 C. C. P. A. (Customs) 215, T. D. 44401.

For the foregoing reasons the protest should be and the same hereby is overruled.